IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MILAGROS DEL CARMEN MUÑIZ-
HERNANDEZ,

      Plaintiff,

          v.                           CIVIL NO.: 10-1569 (MEL)

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

**OPINION AND ORDER**

## I.    PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Milagros del Carmen Muñiz-Hernandez ("plaintiff" or "claimant") was born on July 26, 1961 (Tr. 27.) She has a high school education and past relevant work as an assembler where she would sit for around 8 hours, use her hands for constant repetitive movements, handle and carry large objects of approximately 20 pounds. (Tr. 27, 107.) Plaintiff had to use machines and job instructions required dealing with detailed small parts, although they were repetitive. (Tr. 27, 107.) Plaintiff alleges she suffers from back pain, cervico-lumbar pain, hand pain with numbness, leg pain, and frequent headaches. (Tr. 20, 108-114.) Further, plaintiff alleges she suffers from depression, being emotionally affected due to chronic lower back pain, insomnia, diminished memory, and disorientation. (Tr. 20, 122-128.)

On June 14, 2004, plaintiff filed an administrative claim for a period of disability and disability insurance benefits alleging disability since August 28, 2001. (Tr. 17.) The Commissioner

denied her application both initially on January 27, 2005 (Tr. 35-37), and upon reconsideration on October 27, 2005. (Tr. 40-42.) Thereafter, plaintiff filed a timely written request for an administrative hearing dated November 16, 2005. (Tr. 46.) An Administrative Law Judge ("ALJ"), issued a written decision dated May 30, 2008, finding the plaintiff not disabled during the alleged period of disability. (Tr. 11-28.) On May 1, 2010, the Appeals Council denied the plaintiff's request for review; therefore the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner" or "defendant"). (Tr. 7-9).

On June 22, 2010, plaintiff filed a complaint in this case seeking review of the ALJ's decision pursuant to 42 U.S.C. § 405(g) together with Title 5 U.S.C. 706, claiming the ALJ's decision was not based on substantial evidence. (Docket No. 1.) On December 8, 2010, defendant filed both an answer and a certified transcript of the administrative record. (Docket Nos. 5; 6.) Both parties have submitted supporting memoranda. (Docket Nos. 13; 17.)

## II.     LEGAL ANALYSIS

### A.     Legal Standard

Section 205(g) of the Social Security Act provides, *inter alia*, that "[t]he court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with our without remanding the cause for a rehearing"and that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).

"In Social Security cases, the [c]ourt must examine the record and uphold any final decision of the Commissioner denying benefits, unless the decision is based on faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)). The Commissioner's "findings of fact are conclusive when supported by substantial evidence in the record, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortíz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Hernández-Guzman v. Astrue, 2009 U.S. Dist. LEXIS 99213, at *5 (D.P.R. Oct. 23, 2009) (quoting Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971), cert. denied, 402 U.S. 976). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortíz, 955 F.2d at 769. However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Ortíz, 955 F.2d at 769 (citing Quiñones v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  "The resolution of conflicts in the evidence and the determination of the ultimate question of disability is for the ALJ, not for the doctors or for the reviewing [c]ourts." López-Vargas, 518 F. Supp. 2d at 335 (citing Perales, 402 U.S. at 399).  Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial

3

evidence." Quiñones Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per

curiam).

To establish entitlement to disability benefits, the claimant bears the burden of proving that

he or she is disabled with the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S.

137, 146n.5, 146-47 (1987). It is well settled that a claimant is deemed to be disabled under the

Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12 months."

42 U.S.C. § 423(d)(1)(A). Furthermore, Section 223(d) of the Social Security Act provides, in its

pertinent part, that:

> (2)(A) an individual shall be determined to be under a disability only if his physical
> or mental impairment or impairments are of such severity that he is not only unable
> to do his previous work but cannot, considering his age, education, and work
> experience, engage in any other kind of substantial gainful work which exists in the
> national economy, regardless of whether such work exists in the immediate area in
> which he lives, or whether a specific job vacancy exists for him, or whether he would
> be hired if he applied for work.
>
> 3) ... [A] "physical or mental impairment" is an impairment that results from
> anatomical, physiological, or psychological abnormalities which are demonstrable
> by medically acceptable clinical and laboratory diagnostic techniques....
>
> (5)(A) An individual shall not be considered to be under a disability unless he
> furnishes such medical and other evidence of the existence thereof as the
> Commissioner of Social Security may require...

42 U.S.C. § 423. In determining whether a claimant is disabled, all of the evidence in the

record will be considered. 20 C.F.R. § 404.1520(a)(3) (2008).

Claims for disability benefits are evaluated according to the five-step sequential evaluation process prescribed by Social Security regulations.  20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140-42.

> Through step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity."  If he/she is, disability benefits are denied.  20 C.F.R. § 404.1520(b).  If he/she is not, the decision-maker proceeds to step two, through which it is determined whether the claimant has a medically severe impairment or combination of impairments.  See 20 C.F.R. § 404.1520( c).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, app. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which the ALJ determines whether the impairment prevents the claimant from performing work he/she has performed in the past.  If the claimant is able to perform his/her previous work, ... he/she is not disabled.  20 C.F.R. § 404.1520(e). If it is determined that the claimant cannot perform this work, then the fifth and final step of the process demands a determination on whether the claimant is able to perform other work in the national economy in view of the residual functional capacity, as well as age, education, and work experience.  The claimant would be entitled to disability benefits only if he/she is not able to perform other work. 20 C.F.R. § 404.1520(f).

Sosa v. Comm'r of Soc. Sec., 550 F. Supp. 2d 279, 284 (D.P.R. 2008).

"The claimant has the burden, under steps one through four, of proving that he cannot return to his former employment because of the alleged disability.  Once a claimant has demonstrated a severe impairment that prohibits return to his previous employment, the Commissioner has the burden, under step five, to prove the existence of other jobs in the national economy that the claimant can perform."  Berríos Velez v. Barnhart, 402 F. Supp. 2d 386, 390 (D.P.R. 2005) (citing Santiago

v. Sec'y of Health & Human Servs., 944 F.2d 1, 5 (1st Cir. 1991) (per curiam); Ortíz v. Sec'y of

Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (per curiam)).

### B.     ALJ's Findings

After consideration of the evidence on record, the ALJ made the following findings:

1. "The claimant last met the insured status requirements of the Social Security Act on
December 31, 2006." (Tr. 19.)

2. "The claimant did not engage in substantial gainful activity during the period from her
alleged onset date of August 28, 2001 through her date last insured of December 31, 2006 (20 C.F.R
§ 404.1520(b) and 404.1571 *et seq*.)." (Tr. 19.)

3. "Through the date last insured, the claimant had the following severe impairments: disc
herniation of the lumbar sine (L4-L5 with disc dessication of L5-S1), lumbosacral strain, cervico-
dorsolumbar myositis, and depression (20 C.F.R § 404.1520(c))." (Tr. 19.)

4. "Through the date last insured, the claimant did not have an impairment or combination
of impairments that met or medically equaled one of the listed impairments in 20 C.F.R § Part 404,
Subpart P, Appendix 1 (20 C.F.R § 404.1520(d), 404.1525 and 404.1526)." (Tr. 20.)

5. "Through the date last insured, the claimant had the residual functional capacity to perform
light work as defined in 20 C.F.R § 404.1567(b) except that the claimant needed to avoid vibration.
Furthermore, due to severe depression, she was prevented from understanding, remembering, and
carrying out detailed instructions/tasks, but she retained the ability for understanding, remembering,
and carrying out routine, repetitive, short, simple instructions/tasks. She also retained the ability for
making judgments in simple work-related situations; responding (relating) appropriately to
supervision, co-workers, as well as to changes in usual work situations, and maintaining adequate

attention/concentration spans for at least 2-hour intervals throughout a work day or work week." (Tr. 23.)

6. "Through the date last insured, the claimant was unable to perform past relevant work (20 C.F.R § 404.1565)." (Tr. 27.)

7. "The claimant was born on July 26, 1961 and was 45 years old, which is defined as a younger individual age 18-49, on the date last insured (20 C.F.R § 404.1563)." (Tr. 27.)

8. "The claimant has at least a high school education and is not able to communicate in English (20 C.F.R § 404.1564)." (Tr. 27.)

9. "Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R Part 404, Subpart P, Appendix 2)." (Tr. 27.)

10. "Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 C.F.R § 404.1560( c) and 404.1566)." (Tr. 27-28.)

11. "The claimant was not under a disability as defined in the Social Security Act, at any time from August 28, 2001, the alleged onset date, through December 31, 2006, the date last insured (20 C.F.R § 404.1520(g))." (Tr. 28.)

## C.     The Medical Evidence Contained in the Record

The certified administrative record contains, *inter alia*, the following medical evidence regarding the plaintiff's physical conditions:

In August 2001, the claimant sought treatment under the auspices of the State Insurance Fund (SIF) for complaints of lower back pain and sleeping problems. (Tr. 241.) She was diagnosed and treated for cervico-dorsolumbar myositis and sprain. (Tr. 237-238.) On February 8, 2002 an MRI of the claimant's lower extremities showed L4-L5 small central subligamentous disc herniation with disc dessication of L5-S1. (Tr. 228.) A physical examination by a neurosurgeon from SIF determined she had limitations of movement of the cervical spine and lumbosacral spine. (Tr. 228.)

On November 4, 2004, Dr. Iris Acevedo-Marty, consulting neurologist, evaluated the claimant. (Tr. 242.) The claimant complained of back pain, cervico-lumbar pain, hand pain with numbness, leg pain, and frequent headaches. (Tr. 242.) The physical examination revealed limitations of movement effecting the claimant's shoulders, lumbar spine and hips, with tenderness to palpation of the entire spine.[1] (Tr. 244-250.)

In January 2005, Dr. José Pesquera García, a physician from the Disability Determination Service, completed a physical residual functional capacity ("RFC") assessment for the claimant. (Tr. 372-380.) He concluded the plaintiff could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand or walk for about 6 hours in an 8-hour work day and had unlimited ability to push/pull weights listed above. (Tr. 374.) He also concluded plaintiff could occasionally climb, stoop, and crouch, and should avoid concentrated exposure to vibrations. (Tr. 375, 377.)

On April 28, 2005, Dr. Jesús Maldonado-Hernández, a physiatrist, evaluated the claimant. (Tr. 285.) He referred to laboratory studies (i.e. EMG-NCV studies) showing finding of lumbar disc herniation and bilateral carpal tunnel syndrome. (Tr. 288, 290.) Nerve conduction study of lower extremities revealed cervical and dorsal HNP L4-L5, and axonal neuropathy of right posterior tribal

---

[1]Dr. Acevado-Marty's reports also indicate that plaintiff was reliable, kind, and cooperative, and that she was able to take off her sandals without help, sat at the examination table without help, and was alert, active, and oriented. (Tr. 242-243.)

nerve. (Tr. 292.) Dr. Maldonado estimated disability in amounts of 5% and 10% for the different conditions affecting the claimant. (Tr. 292.)

On September 24, 2005, Michael Babilonia, a rheumatologist, examined the claimant. (Tr. 361.) The claimant complained of lower back pain (non-radiating), moderate pain of the left ankle and of the toes of her left foot. (Tr. 362.) The physical examination showed restriction in terms of movement of cervical and lumbar spine, and left ankle articulation and foot; the movement angle of all other articulations appeared to be normal. (Tr. 363.) Dr. Babilonia, however, classified plaintiff's motor strength as excellent and reported no deficit in sensory modalities. (Tr. 363.) He also noted that plaintiff used no cane or crutches to walk and has no limp. (Tr. 363.)

With respect to plaintiff's mental conditions, the certified administrative record contains, *inter alia*, the following medical evidence:

Plaintiff was treated by Dr. Ingrid Alicea-Berríos from July 2003 through at least November 2007 for an emotional condition consisting of anxiety, nervousness, major depression, disorientation, and loss of memory due to chronic lower back pain and the medications taken for pain. (Tr. 293-336, 425-448.) References were made to the claimant needing help with daily living, her task persistence being affected, and her poor stress tolerance. (Tr. 304, 306, 308.)  She also calculated claimant's global assessment of functioning (GAF) at 45%. (Tr. 308, 310.)[2] Dr. Alicea-Berríos, however, never recommended that plaintiff be hospitalized or placed in a sheltered living environment. (Tr. 22.) She also repeatedly indicated that plaintiff was oriented, with intact intellect and control of impulses, and that her medication did not produce negative side-effects. (Tr. 300, 312-334.)

---

[2] The GAF considers the psychological, social, and occupational functioning on a hypothetical continuum of mental health illness. A rating of 44-50 denotes serious symptoms (ex: suicidal ideation) or any serious impairment in social, occupational, or school functioning (ex: no friends, unable to keep a job). Diagnostic Statistical Manual of Mental Disorders ("DSM-IV") p. 32, 4 Edition, 2000.

In addition, plaintiff's mental health was also evaluated by the state agency consultants who had previously reviewed her claim regarding plaintiff's mental status.[3] (Tr. 22, 337-356.)  On November 22, 2004, Dr. Carmen N. Piñeiro a clinical psychologist with the State Agency, evaluated plaintiff's functional limitations under Section 12.04 Affective Disorders, stating that plaintiff had moderate restrictions of activities of daily living, moderate difficulty in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. (Tr. 349.) Further, in her Mental RFC Assessment, Dr. Piñeiro noted that while plaintiff suffered from physical conditions, she was logic, coherent, and oriented. (Tr. 355.) She further noted that plaintiff was able to understand, remember, and carry out short and simple instructions, and she was able to ask questions, request assistance, and respond to changes in a routine work setting.[4] (Tr. 355.)

### D.      The ALJ's Application of the Five Step Process

The ALJ is required to complete a five-step sequential process in order to determine whether or not an individual qualifies to receive Social Security Disability Benefits. Sosa v. Comm'r of Soc. Sec., 550 F. Supp. 2d at 284. In cases where this determination is appealed, it is the court's role to examine the record and determine whether the is substantial medical evidence that supports the conclusion reached by the ALJ. Rodriguez Pagan v. Sec'y of Health & Hum. Servs., 819 F.2d 1, 3 (D. P.R. 1987).

---

[3] Dr. Carmen N. Piñeiro, state clinical psychologist, evaluated plaintiff's 12.04 affective disorder and completed plaintiff's mental RFC on November 22, 2004. Dr. Luis F. Umpierre Vela, state clinical psychologist followed up with plaintiff and confirmed Dr. Piñeiro's findings on September 6, 2005. (Tr. 337-356.)

[4] The RFC assessment by Dr. Piñeiro was also confirmed by Dr. Umpierre Vela on September 6, 2005. (Tr. 337-356.) Dr. Umpierre Vela also noted that plaintiff's mental condition showed no sign of worsening. (Tr. 337.)

In the case presently before the court, the ALJ determined that the plaintiff satisfied the first step by proving that she "did not engage in substantial gainful activity during the period from her alleged onset date of August 28, 2001 through her date last insured of December 31, 2006 (20 C.F.R § 404.1520(b) and 404.1571 *et seq*.). (Tr. 19.) Plaintiff's showing of severe medical impairments satisfied the requirements of the second step under 20 C.F.R § 404.1520( c). (Tr. 19.) However, at step three the ALJ determined that "the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1 (20 C.F.R § 404.1520(d))." (Tr. 20.) Thus, the ALJ's analysis continued to step four, where he determined that "the claimant had the residual functional capacity to perform light work as defined in 20 C.F.R § 404.1567(b) except that the plaintiff needed to avoid vibration." (Tr. 23.) The ALJ also stated that because of the claimant's severe depression, "she was prevented from understanding, remembering, and carrying out detailed instructions and tasks." (Tr. 23.) Because the plaintiff's past relevant work including sitting as an assembler for long hours using vibrating machinery, the ALJ concluded that "the claimant was unable to perform past relevant work (20 C.F.R § 404.1565)."(Tr. 27.)

The fifth step in the sequential process requires the Commissioner to show that the claimant "is able to perform other work in the national economy in view of [her] residual functional capacity as well as [her] age, education, and work experience." Sosa v. Comm'r of Soc. Sec., 550 F. Supp. 2d at 284. If the Commissioner meets that burden, claimant is not disabled. Ortíz, 890 F.2d at 524. In the instant case, the ALJ applied the Medical Vocation Guidelines ("the Grid") corresponding to the plaintiff's age, education, experience, and the RFC finding in step four, resulting in a finding of

"'not disabled,' as to whether or not the claimant has transferable job skills (See SSR 82-41 and 20

C.F.R Part 404, Subpart P, Appendix 2)." (Tr. 27.)

> **E.  Plaintiff's objections to the ALJ's findings on the grounds that the Commissioner's decision is not supported by substantial evidence taking the record as a whole, and that the correct legal standards were not applied.**

The plaintiff does not appear to challenge the ALJ's findings at steps one, two, or three.

However, plaintiff disagrees with the ALJ's RFC determination at step four and the subsequent

finding under step five that "there were jobs that existed in significant numbers in the national

economy that the claimant could have performed."(Tr. 27-28.) Thus, the court will first consider

whether there was substantial evidence to support the mental RFC determination and then whether

the ALJ appropriately determined, using the correct legal standards, that the plaintiff could have

performed a significant number of jobs in the national economy.

> **1.  Plaintiff's Objection to the ALJ's Mental RFC Determination**

Plaintiff argues that the ALJ improperly afforded less than controlling weight to the treating

psychiatrist Dr. Alicea-Berríos' opinion, while affording greater weight to the state agency

physicians. (Docket No. 13, pp. 17- 21.) More specifically, plaintiff argues that the ALJ should have

credited Dr. Alicea-Berríos' report that plaintiff had a GAF of 45 and she was disabled from work.

(Tr. 308, 310.) Dr. Alicea-Berríos also found that the plaintiff had major depression and was

disorientated at times, in addition to suffering some memory loss. (Tr. 300, 304, 312-336.)

As an initial matter, conclusions as to whether a claimant is "disabled"and related legal

conclusions are administrative decisions that are to be made by the Commissioner, not by medical

personnel. 20 C.F.R. § 404.1527(e); see Rivera v. Comm'r of Soc. Sec., 2010 U.S. Dist. LEXIS

1493, at *14-*16 (D.P.R. Jan. 8, 2010) ("while [his physician] believed that [c]laimant was disabled

and unable to work, disability under the Act is a legal determination that is reserved to the ALJ, and

medical experts are not qualified to render this ultimate legal conclusion.") (citing Frank v. Banhart,

326 F.3d 618, 620 (5th Cir. 2003) (internal citation omitted)). Therefore, the ALJ's decision not to

give any special significance to Dr. Alicea-Berríos'opinion that the plaintiff is disabled is not

necessarily legally improper. (Tr. 22.); see 20 C.F.R. § 404.1527(e).

Generally, an ALJ should give more weight to a treating physician's opinion in making

disability determinations. 20 C.F.R. § 404.1527(d)(2). However, the ALJ will only give more weight

to the opinion of the treating physician "if well-supported... and not inconsistent with other

substantial evidence in the record." Berríos-Velez, 402 F. Supp. 2d at 391 (citing 20 C.F.R. §

404.1527(d)(2)). Therefore, "when a treating doctor's opinion is inconsistent with other substantial

evidence in the record, the requirement of 'controlling weight' no longer applies." Id. (citations

omitted).

As the ALJ observed, Dr. Alicea-Berríos' opinion was neither consistent with the record, nor

well supported. (Tr. 21-22.)  For example, Dr. Alicea-Berríos indicated in her assessment that

plaintiff's memory was slowed due to her medication, and yet in her treatment notes she repeatedly

reflects that plaintiff had no side effects from medication. (Tr. 300, 306, 312, 316-334, 428-448.)

Additionally, Dr. Alicea-Berríos indicated that plaintiff became irritated and frustrated easily.

However, she repeatedly indicated the plaintiff had shown no signs of aggression or violent behavior.

(Tr. 300, 306, 312, 316-334, 428-448.)  The ALJ further observed that Dr. Alicea-Berríos noted the

plaintiff had significant limitations, yet she never recommended the plaintiff be hospitalized or

placed in a sheltered living environment. (Tr. 22.)  The ALJ stated that Dr. Alicea-Berríos'

opinion/conclusion is inconsistent with the objective medical evidence and the rest of the substantial

evidence because throughout the duration of the claim, Dr. Alicea-Berríos noted that the claimant always remained logical, coherent, and alert. (Tr. 22.)  Additionally, the ALJ objected to the doctor's use of pre-printed forms without stating bases for her conclusions and opinions.[5] (Tr. 22.) The ALJ properly observed that Dr. Alicea-Berríos' opinion was not entitled to controlling weight because it was not consistent with her own notes or the objective evidence. See Arruda v. Barnhart, 314 F. Supp. 2d 52 (D. Mass. 2004) (noting an ALJ may downplay the weight afforded a treating physician's assessment when it is internally inconsistent or inconsistent with other evidence).

Moreover, state agency medical consultants reviewed the records and concluded that plaintiff retained the capacity to understand, remember, and carry out short and simple instructions; she could maintain attention for at least two hours; she was able to ask questions and retain assistance; and she was able to respond to changes in a routine work setting. (Tr. 355.)  Dr. Umpierre Vela confirmed the previous state agency evaluations, and he further stated plaintiff's condition had not worsened. (Tr. 337-356.)  As a result, the ALJ gave specific reasons as to why less weight should be afforded to Dr. Alicea-Berríos' opinion, and greater weight to the state agency psychologist's findings, and therefore his allocation of weight is supported by substantial evidence. Cf. Nobrega v. Barnhart , No. 05-30204-KPN, available at 2006 WL 2358886, at *7 (D. Mass. 2006) (citing Lizotte v. Sec'y of Health & Human Servs., 654 F. 2d 127, 128 (1 st Cir. 1981)) (finding that where the ALJ noted that claimant's treating physician's diagnosis was based on subjective complaints, with little supporting objective evidence, and where at times internally contradictory, the resolution of conflicting opinions between the treating physician and consulting physician should be carried out by the ALJ).

---

[5] Defendant concedes that Dr. Alicea-Berríos did write out answers to the pre-printed forms, but observes that her notes were inconsistent with the rest of the evidence which suggested that plaintiff was not disabled.

Further, an ALJ is not required to adopt a particular opinion. Rather, "[t]he basic idea which

the claimant hawks- the notion that there must always be some super-evaluator, a single physician

who gives the factfinder an overview of the entire case- is unsupported by the statutory scheme, or

by the caselaw, or by common sense..." Evangelista v. Sec'y of Health & Humand Servs., 826 F. 2d

136, 144 (1 st Cir. 1987). As a result, it is clear the ALJ did not improperly give more weight to the

state consulting psychologist than to the treating physician, and he provided specific reasons for

doing so. Therefore, the decision should be found to have been based on substantial evidence.

> **2.     Plaintiff's objection to the ALJ's use of the Medical Vocational Guidelines to show other available work**

Plaintiff next contends that the ALJ improperly relied on the Grids in making his decision

at step 5 that plaintiff was not disabled. (Docket No. 13 p. 20.)  Typically, the Grids are used when

a plaintiff has solely exertional limitations to direct a finding of disabled or not disabled. See 20

C.F.R. § Pt. 404, subpt. P, App. 2.  However, the Grids are also applicable when a claimant has non-

exertional limitations, provided those limitations do not significantly erode the exertional base. SSR

85-15, Capability to Do Other Work- the Medical Vocational Rules as a Framework for Evaluating

Solely Nonexertional Impairments, 1985 WL 56857, at *1 (November 30, 1984). The Grids also

contemplate unskilled work. Id. at *4. Unskilled work requires the ability to understand, carry out,

and remember simple instructions; to respond appropriately to usual work situations; and, to deal

with changes to a routine work setting. Id.  The ALJ properly relied on the state consultant

psychologists' findings that plaintiff could understand, remember, and carry out short and simple

instructions, maintain attention and concentration for two hour periods, and respond to change in a

routine work environment. (Tr. 355.) Therefore, substantial evidence supports the ALJ's RFC

determination. (Tr. 27.) Those findings in turn reflect that the claimant was capable of unskilled work; therefore the ALJ properly relied on the Grids. (Tr. 27-28.)

Further, plaintiff claims that when the Grid is used as a framework in determining disability, and the reduction of the occupational base is more than marginal, the testimony of a vocational expert is required. 20 C.F.R. Part 404, Subpart P, App. 2.  See Burgos López v. Sec'y of Health & Human Servs., 747 F.2d 37, 42 (1 st Cir. 1984). (Docket No. 13 p. 7.)  Plaintiff argues that the opinion of a disability examiner is an inadequate substitute for the live testimony of a vocational expert, which plaintiff claims would otherwise be available for cross examination as part of a full and fair hearing. (Docket No. 13 p. 7.)

An ALJ may still rely on the Grid in some cases involving non-exertional impairments, and the First Circuit has held that, so long as the non-exertional limitation is "justifiably found to be substantially consistent with the performance of the full range of unskilled work, the Grid retains its relevance and the need for vocational testimony is obviated." See Hannan v. Astrue, 2009 WL 2853578 at *7 (D. Mass. 2009) (citing Ortiz, 890 F.2d at 524, 526). When the only mental limitation found is the non-exertional limitation to simple, routine mental tasks, there is not more  than a marginal effect on the occupational base as a matter of law. See Todd v. Astrue, 2009 WL 3148726 at *2 (D. Me. 2009) (report and recommendation adopted by Todd v. Astrue, 2009 WL 3418633 (D. Me. 2009)).  Accordingly, a restriction on the plaintiff to simple routine tasks in the work place would not be incompatible with a resort to the Grid in place of a vocational expert for a plaintiff who is limited to unskilled work. Id.

**3.     Plaintiff's objection to the examples of jobs provided by the Disability Determination Services and the types of jobs which the plaintiff could perform in accordance to the residual mental capacity accepted by the ALJ.**

Finally, plaintiff claims that once it was accepted by the ALJ that the plaintiff could not perform her past relevant work, the restrictions for performing simple work, as was the finding of the ALJ, did not match any of the three examples of alternate jobs given by the ALJ. (Docket No. 13 p. 9.) Plaintiff claims the jobs provided by the Disability Determination Services were in great contrast to what the Dictionary of Occupation Titles (DOT) states as skills required for those jobs and the types of jobs which the plaintiff could perform in accordance to the residual mental capacity accepted by the ALJ. (Docket No. 13 p. 9.)  Further, plaintiff claims that the ALJ improperly stated in his opinion that these jobs existed in significant numbers, but without giving evidence of the numbers of each type of job in the region. (Docket No. 13 p. 8.)

Plaintiff's suggestion that the number of jobs must be considered in the context of the geographical area at issue, or in light of the population of the region, is not what is required in an ALJ's showing of a significant number of jobs in the economy. Barker v. Sec. of Health & Human Serv., 882 F.2d 1474, 1479 (9th Cir. 1989); see also Martinez v. Heckler, 807 F.2d 771, 775 (9th Cir. 1986). The language of the regulations does not speak in terms of whether there is a significant ratio of jobs in the economy but speaks in terms of whether the ALJ provided a significant number of jobs that the plaintiff can perform. Graves v. Secretary, 473 F.2d 807, 809 (6 th Cir. 1973). "[W]hen there is testimony that a significant number of jobs exists... it is immaterial that this number is a small percentage of total number of jobs in a given area." Hall v. Bowen, 837 F.2d 272, 275 (6th Cir. 1988). The ALJ specified three jobs suggested by the DDS examiner –  order caller, routing clerk, and office helper (Tr. 28) – all of which are consistent with an RFC for unskilled work where all

reflect a Specific Vocational Preparation (SVP) level of 2 and Reasoning Development Level of 2. See Dictionary of Occupational Titles, 209.667-014, 222.687-022, 239.561-010; see Pepin v. Astrue, No. 09-464-P-S, 2010 WL 3361841, at *5 (D. Me. 2010). (recommended decision affirmed) (finding a reasoning development level of 2 is not inconsistent with unskilled work).

Plaintiff also argues that the jobs recommended by the Disability Determination Services, such as the office helper (Tr. 28), require vocabulary and reading rates much higher than the routine, short, simple work that the ALJ assessed that the plaintiff could perform. (Docker No. 13 p. 10.) However, these are not part of the requirements in the determination of whether said jobs are unskilled.[6]  The jobs suggested by the DDS are consistent with a level two definition of work which "only requires a person to '[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions[; d]eal with problems involving a few concrete variables in or from standardized situations.'" Money v. Barnhart, 91 Fed. Appx. 210, 215 (3d Cir. 2004). Work in any of the three jobs suggested by the DDS, all of which require a reasoning level of 2, would not contradict the requirement that her work be simple, routine and repetitive. Id.  Therefore, the ALJ determined, considering the plaintiff's age, education, work experience, and RFC, that there were jobs that exist in significant numbers in the national economy that the claimant could have performed. (20 C.F.R. § 404.1560(c) and 404.1566.) (Tr. 28.)   Thus, the ALJ's ultimate determination should be found to have been based on substantial evidence in the record.

---

[6] As a general rule, the mental capabilities required to perform unskilled work are (i) "[u]nderstanding, remembering, and carrying out simple instructions[,]" (ii) "[m]aking judgments that are commensurate with the functions of unskilled work- *i.e.,* simple work-related decisions[,]" (iii) "[r]esponding appropriately to supervision, co-workers and usual work situations,"and (iv) "[d]ealing with changed in a routine work setting." Todd v. Astrue, 2009 WL 3148726 at *2 (D. Me. 2009) (report and recommendation citing Social Security Ruling 96-9p, reprinted in *West's Social Security Reporting Service Rulings* (Supp. 2009), at 160-61) adopted by Todd v. Astrue, 2009 WL 3418633 (D. Me. 2009).

**III.    CONCLUSION**

For the reasons explained above, it is hereby concluded that the ALJ's decision is supported by substantial evidence in the record. Therefore the decision of the Social Security Commissioner is AFFIRMED.

In San Juan, Puerto Rico, this 15th day of June, 2011.

s/Marcos E. López

United States Magistrate Judge
